STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-06-108

MIDDLESEX MUTUAL ASSURANCE
COMPANY,

Plaintiff

v.

**ORDER**

RIVERSIDE CONDOMINIUM
ASSOCIATES,

Defendants

DONALD L. GARBRECHT
LAW LIBRARY

AUG 0 2 2007

The plaintiff insurance company issued a business owners property insurance policy to the defendant condominium association covering condominium units on Water Street in Kennebunk. The condominiums are in a timber frame building that was converted from its earlier use as a mill.

Damage was discovered around concealed timber columns. After further investigation it was discovered that there were problems, which needed correction, because of rot at the base of a column which had been sunk directly into sand. Other columns suffered from the same risk. Additionally an earlier renovation had removed columns increasing the span between columns to a potentially unsafe distance. Some initial repairs were made and more extensive and expensive repairs have since been made.

This suit is a declaratory judgment by the insurance company asking whether it is required to pay under the policy for the repairs and related costs. Both parties have filed motions for summary judgment which have been ably briefed and argued.

The relevant policy is entitled Businessowners special property coverage form. Section B(2)(i) excludes coverage for collapse except as permitted by A.5.d. Section A.5.d. under additional coverages reads as follows:

> (1) We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this policy, if the collapse is caused by one or more of the following: (a) The "specified cause of loss" or breakage of building glass, all only as insured against in this policy; (b) Hidden decay; (c) Hidden insect or vermin damage; (d) Weight of people or personal property; (e) Weight of rain that collects on a roof; (f) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in d.(1)(a) through d.(1)(e), we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

The policy also provides at A.5.d.(4) that, "Collapse does not include settling, cracking, shrinkage, bulging or expansion."

The decision as to whether there is coverage turns on the definition of "collapse" which is not defined in the policy. Does "collapse" mean "a sudden failure" or does it include a more gradual not completed process? Does an ambiguity exist such that the insurance policy should be construed against the insurance company to find coverage? Likewise, should public policy considerations, which would encourage repairs prior to a "collapse" within its traditional meaning, dictate a broader construction of "collapse"?

I was confronted with similar questions in *Ames v. Nationwide Insurance Company*, York County Superior Court case CV-01-235, and I decided those issues in an opinion of June 5, 2002 which is attached. The reference to (Me.) at the top of page 3 should be corrected to (Md.).

2

While courts throughout the country have reached varying conclusions I continue to believe that ordinary words should be given their ordinary meaning. While there might some day have been a "collapse" in this case, a "collapse" did not occur. The policy specifically excludes settling, cracking, shrinkage, bulging or expansion from the definition of "collapse". All these are gradual processes and, depending upon their severity, might produce or might not produce a sudden failure or a cave in, falling down or complete break down.

A "collapse" is covered under the policy if it is caused by hidden decay, hidden insect or vermin damage, weight of people or personal property or weight of rain that collects on the roof. These covered "collapses" suggest that collapse has its ordinary meaning of a total break down caused either by a sudden failure or hidden circumstances. Here neither the building nor any part of it collapsed either through a gradual process or suddenly. The problems were observed, identified and corrected before a "collapse" occurred. These responsible actions by the defendant association are consistent with non-covered maintenance expenses rather than a covered loss. Rather than wait for the building to fall down and submit a claim they fixed the problem. That is how the policy allocates risks.

It is not necessary to decide whether the "negligent work" exclusion at Section B(3)(c) applies.

The entry is:

Plaintiff's motion for summary judgment is granted. Defendant's cross-motion for summary judgment is denied. The plaintiff is not obligated to pay the defendant's claim, as the claim was not covered by the defendant's policy, as a "collapse" did not occur. Judgment for the Plaintiff on the Counterclaim without costs.

Dated:      May 11, 2007

Laurence H. Leavitt, Esq. - PL
John Hatch, Esq. - PL
David P. Ray, Esq. - DEF          3